# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

* * * * * * * * * * * * * * * * * * * * * * * * *
| | |
|---|---|
| MELINDA MCDONALD, | * |
| | *     No. 22-0851V |
|            Petitioner, | *     Special Master Christian J. Moran |
| | * |
| v. | * |
| | *     Filed:  October 21, 2025 |
| SECRETARY OF HEALTH | * |
| AND HUMAN SERVICES, | * |
| | * |
|            Respondent. | * |

* * * * * * * * * * * * * * * * * * * * * * * * *

<u>Sean Franks Greenwood</u>, The Greenwood Law Firm, Houston, TX, for petitioner;
<u>Alexis B. Babcock</u>, U.S. Dep't of Justice, Washington, DC, for respondent.

**PUBLISHED DECISION AWARDING ATTORNEYS' FEES AND COSTS**[1]

      Melinda McDonald alleged that the influenza vaccination she received on September 16, 2019 caused her to suffer from myalgic encephalomyelitis/chronic fatigue syndrome and cervical dystonia.  Pet., filed Aug. 3, 2022.  After submitting reports from experts, she dismissed her case voluntarily.  She now seeks an award of attorneys' fees and costs.  For the reasons explained below, she is awarded $47,744.59.

**I.    Facts**[2]

      Ms. McDonald was born in 1966.  In September 2019, she received a dose of the flu vaccine.  She developed neck pain and in November 2019, a neurologist diagnosed her as

---

[1] Because this published decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). This posting means the decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), the parties have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] Because the events in Ms. McDonald's life do not significantly affect the outcome of the pending motion for attorneys' fees and costs, they are set out relatively briefly.

suffering from cervical dystonia. Roughly one year later, a different doctor diagnosed Ms. McDonald as suffering from myalgic encephalopathy.

## II. Procedural History

### A. Before Litigation

According to the timesheets of her attorney, Ms. McDonald first consulted Mr. Greenwood in October 2020.[3] Paralegals in Mr. Greenwood's office collected medical records.

Some time entries show that professionals in Mr. Greenwood spent less than ten hours researching cervical dystonia and myalgic encephalopathy / chronic fatigue syndrome. See entries for July 14, 2022 (4.3 hours). A substantial amount of time was spent drafting the petition and Ms. McDonald's affidavit, which accompanied the petition.

### B. Litigation's Entitlement Phase

Acting on behalf of Ms. McDonald, Mr. Greenwood filed her petition on August 3, 2022. As noted previously, the petition alleged two claims: (1) the vaccine caused Ms. McDonald to have cervical dystonia and (2) the vaccine caused her to suffer myalgic encephalopathy / chronic fatigue syndrome. The petition is approximately six pages of which approximately four and a half pages consists of assertions about her medical history. With the petition, Ms. McDonald also submitted an affidavit. Ms. McDonald's affidavit is approximately 13 pages and generally consists of a recounting of her medical records. Exhibit 1.

In response to an order, Mr. Greenwood and his staff reviewed medical records to determine whether treating doctors associated the flu vaccination with either cervical dystonia or myalgic encephalopathy / chronic fatigue syndrome. They did not. See Pet'r's Status Rep., filed Oct. 14, 2022.

The Secretary opposed an award of compensation. Resp't's Rep't, filed Jan. 13, 2023. For the claim based upon cervical dystonia, the Secretary pointed out that in the medical records, Ms. McDonald linked her neck problem to moving her bed. For the claim based upon myalgic encephalopathy / chronic fatigue syndrome, the Secretary questioned this diagnosis as Ms. McDonald denied fatigue in several medical records created after vaccination.

Ms. McDonald filed her first report from her first expert, Joseph S. Jeret, on February 22, 2023. Exhibit 19. Dr. Jeret asserted that chronic fatigue syndrome is an appropriate diagnosis. Id. at 9. He also linked the flu vaccine to the chronic fatigue syndrome via the theory of molecular mimicry. Despite the Expert Instructions, Dr. Jeret's first report did not contain any information about timing / the onset of chronic fatigue syndrome. In an ensuing status

---

[3] The timesheets were submitted as Exhibit 87 in support of the pending motion for an award of attorneys' fees and costs.

conference, Mr. Greenwood stated that Ms. McDonald planned to file a report from immunologist, who would cover timing.

Ms. McDonald's second expert is from an immunologist, David Axelrod. Exhibit 30. He proposed that molecular mimicry could explain how the flu vaccine can cause cervical dystonia and myalgic encephalopathy / chronic fatigue syndrome. Id. at 5-7. His opinion regarding onset was confusing.

A series of reports followed. The Secretary relied upon opinions from a Ph.D. immunologist, Ross Kedl, and a neurologist, Michael Wilson. Dr. Kedl wrote two reports. Exhibits A and E. Dr. Wilson also wrote two reports. Exhibits C and F.

As part of this process of disclosing opinions from experts, Ms. McDonald submitted reports from Dr. Jeret (Exhibit 55, filed Feb. 5, 2024), Dr. Axelrod (Exhibit 57, filed Feb. 9, 2024), and Dr. Jeret again (Exhibit 89, filed May 20, 2024).

It appeared that Ms. McDonald was unlikely to prevail upon either of her claims. Tentative Finding against Entitlement, issued June 18, 2024. The tentative finding led Ms. McDonald to dismiss her claims voluntarily. Order Concluding Proceedings, issued July 30, 2024.

### C. Litigation regarding Attorneys' Fees and Costs

While Ms. McDonald was developing reports from experts, she requested an award of attorneys' fees and costs on an interim basis. Pet'r's Mot., filed Apr. 2, 2024. The Secretary did not respond to this motion.

Because Ms. McDonald incurred some additional attorneys' fees and costs after the April 2, 2024 motion, the undersigned anticipated that Ms. McDonald would submit a superseding motion requesting attorneys' fees and costs for the entire case. After this misunderstanding was discovered, Ms. McDonald disclaimed any interest in seeking additional attorneys' fees and costs. Pet'r's Status Rep., filed Oct. 3, 2025. The Secretary determined not to challenge reasonable basis. Resp't's Resp. filed Oct. 11, 2025.

### III. Analysis Part One: Eligibility for Attorneys' Fees and Costs

Although compensation was denied, petitioners who bring their petitions in good faith and who have a reasonable basis for their petitions may be awarded attorneys' fees and costs. 42 U.S.C. § 300aa-15(e)(1). In this case, although petitioner's claim was ultimately unsuccessful, good faith and reasonable basis existed throughout the matter. Respondent has also indicated that he is satisfied that the claim has good faith and reasonable basis. Resp't's Resp., filed Oct. 11, 2025, at 6. Respondent's position greatly contributes to the finding of reasonable basis. See Greenlaw v. United States, 554 U.S. 237, 243 (2008) ("[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present."). A final award of reasonable attorneys' fees and costs is therefore proper in this case and the remaining question is whether the requested fees and costs are reasonable.

**IV.     Analysis Part Two: Reasonable Amount of Attorneys' Fees and Costs**

In light of the Secretary's lack of objection, the undersigned has reviewed the fee application for its reasonableness. See McIntosh v. Sec'y of Health & Human Servs., 139 Fed. Cl. 238 (2018). Ms. McDonald's application is divided into two components: attorneys' fees and attorneys' costs.

**A.     Reasonable Attorneys' Fees**

The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. This is a two-step process. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1348 (Fed. Cir. 2008). First, a court determines an "initial estimate … by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. Id. at 1348. Here, because the lodestar process yields a reasonable result, no additional adjustments are required. Instead, the analysis focuses on the elements of the lodestar formula, a reasonable hourly rate and a reasonable number of hours.

1.     Reasonable Hourly Rates

Under the Vaccine Act, special masters, in general, should use the forum (District of Columbia) rate in the lodestar calculation. Avera, 515 F.3d at 1349. There is, however, an exception (the so-called Davis County exception) to this general rule when the bulk of the work is done outside the District of Columbia and the attorneys' rates are substantially lower. Id. 1349 (citing Davis Cty. Solid Waste Mgmt. and Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency, 169 F.3d 755, 758 (D.C. Cir. 1999)). In this case, all the attorneys' work was done outside of the District of Columbia.

 For Mr. Greenwood, his associates, and staff, Ms. McDonald requests rates that have been generally awarded previously. See Alqulissi v. Sec'y of Health & Hum. Servs., No. 22-1511V, 2024 WL 5320024, at *2 (Fed. Cl. Spec. Mstr. Dec. 18, 2024). However, Mr. Greenwood's proposed hourly rate for work performed in 2024 ($575.00 per hour) was reduced to $545.00 per hour. Nguyen v. Sec'y of Health & Hum. Servs., No. 21-713V, 2024 WL 3938976 (Fed. Cl. Spec. Mstr. July 25, 2024). This change results in a reduction of $75.00.

2.     Reasonable Number of Hours

The second factor in the lodestar formula is a reasonable number of hours. Reasonable hours are not excessive, redundant, or otherwise unnecessary. See Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993). The Secretary also did not directly challenge any of the requested hours as unreasonable. Nevertheless, three topics merit attention.

4

### a)  Paralegals Billing for Clerical Activities

Paralegals should not charge for performing tasks that are secretarial / clerical. Missouri v. Jenkins, 491 U.S. 274, 288 n.10 (1989); Bennett v. Dep't of Navy, 699 F.2d 1140, 1145 n.5 (Fed. Cir. 1983); Guy v. Sec'y of Health & Human Servs., 38 Fed. Cl. 403, 407-08 (1997). Filing documents is an example of a clerical task for which attorneys should not charge. See Guerrero v Sec'y of Health & Human Servs., No. 12-689V, 2015 WL 3745354, at *6 (Fed. Cl. Spec. Mstr. May 22, 2015) (citing cases), mot. for rev. den'd in relevant part and granted in non-relevant part, 124 Fed. Cl. 153, 160 (2015), app. dismissed, No. 2016-1753 (Fed. Cir. Apr. 22, 2016).

Here, on numerous occasions, people charged for filing documents. The amount of these charges exceeds $2,000. Thus, $2,000 is removed from the attorneys' fees request to account for the excessive billing.

### b)  Excessive Time Spent Drafting the Petitioner's Affidavit and Petition

Mr. Greenwood's associate, Jessica Ochoa, spent more than 40 hours drafting the affidavit and petition. These two documents are treated together because some entries say "Continued working of affidavit and petition." E.g. time entry for April 25, 2022. The requested value exceeds $9,000.

It is difficult to understand how an attorney could spend so much time on these documents. The time entries, themselves, shed little light on the topic as most say something like "Continued affidavit and petition." This vagueness does not communicate the reasonableness of the activity. Based upon the undersigned's experience, awarding half the time is reasonable, if generous. Thus, $4,500 is deducted from the attorneys' fees.

### c)  Excessive Time Spent on Other Activities

In addition to the excessive charges for drafting an affidavit and petition, Mr. Greenwood and his team charged an unreasonable amount of time for other activities.

One easily understood example is on January 17, 2023, Ms. Ochoa spent 1.7 hours reviewing the Secretary's Rule 4 report. The report, admittedly, is on the longer side --- 26 pages. However, most of the report summarizes Ms. McDonald's medical records and, therefore, resembles the information presented in Ms. McDonald's affidavit. In any event, attorneys who are charging $200.00 per hour like Ms. Ochoa should not require more than an hour to review this document.

The attorneys also spent more than 1.5 hours on a motion for extension of time, filed March 20, 2023. The substance of this motion is roughly one and a half pages. Although three paragraphs describe efforts to obtain records from three facilities, spending more than 90 minutes on this task is not reasonable.

5

Other examples of excessive time include the time spent on preparing subpoenas in May 2023 and May 2023.

These examples are not intended to define all instances in which the attorneys or paralegals spent unreasonable amounts of time. When taken together, a reduction of $1,000 is warranted.

In sum, a reasonable amount of attorneys' fees and costs is $40,504.20.

| Attorneys' Fees | |
| --- | --- |
| Requested | $48,079.20 |
| Deduction for Mr. Greenwood's Hourly Rate | -$75.00 |
| Deduction for Paralegal Billing for Clerical Activities | -$2,000.00 |
| Deduction for Drafting Affidavit and Petition | -$4,500.00 |
| Deduction for Other Excessive Charges | -$1,000.00 |
| Awarded | $40,504.20 |

### B.     Costs Incurred

Like attorneys' fees, a request for reimbursement of costs must be reasonable. Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (Fed. Cl. 1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994). Petitioner requests a total of $14,527.89.

Some of the costs are routine, such as costs associated with obtaining medical records, mailing, filing the petition. These are reasonable and adequately documented.

The more noteworthy costs are the costs associated with reports from Dr. Jeret and Dr. Axelrod. Reasonable expert fees are determined using the lodestar method, in which a reasonable hourly rate is multiplied by a reasonable number of hours. Caves v. Sec'y of Health & Human Servs., 111 Fed. Cl. 774, 779 (2013). To determine the reasonableness of an expert's proposed rate, special masters may consider the "area of expertise; the education and training required to provide necessary insight; the prevailing rates for other comparably respected available experts; the nature, quality, and complexity of the information provided; [and] the cost of living in the expert's geographic area." Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 206 (2009). Furthermore, "[p]etitioner has the burden of providing the foregoing information concerning expert fees." Id.

Dr. Axelrod seeks compensation for 20.5 hours of work at a rate of $400.00 per hour for a total request of $8,200.00. Exhibit 88 at 16. Dr. Jeret seeks compensation for 12.75 hours of work at a rate of $500.00 per hour for a total request of $6,375.00.

In the circumstances of this case, the hourly rate of compensation is excessive. In other cases, special masters have compensated Dr. Axelrod and Dr. Jeret at their proposed rates. See, e.g., Alqulissi, 2024 WL 5320024, at *3 (Dr. Axelrod); Leaumont v. Sec'y of Health & Hum.

Servs., No. 18-258V, 2024 WL 966801, at *3 (Fed. Cl. Spec. Mstr. Jan. 23, 2024) (Dr. Axelrod); Williams v. Sec'y of Health & Hum. Servs., No. 19-1269V, 2024 WL 1253768, at *5 (Fed. Cl. Spec. Mstr. Feb. 28, 2024) (Dr. Jeret).

When experts do not perform as well as expected, special masters may reduce their hourly rates in particular cases. Frantz v. Sec'y of Health & Hum. Servs., 146 Fed. Cl. 137, 146 (2019); Murray v. Sec'y of Health & Hum. Servs., No. 19-1976V, 2023 WL 9503422, at *2-3 (Fed. Cl. Spec. Mstr. Dec. 22, 2023) (reducing expert's rate from $500 per hour to $100 per hour).

Here, both Dr. Axelrod and Dr. Jeret opined that the flu vaccine harmed Ms. McDonald, causing her to suffer cervical dystonia and chronic fatigue syndrome. As noted above, under the low standard for finding reasonable basis, these opinions help Ms. McDonald clear that hurdle. However, the opinions were otherwise not good. One short way to express why the opinions were not persuasive is that a Tentative Finding Denying Compensation was issued because Ms. McDonald's evidence seemed so far from persuasive. The Tentative Finding, in turn, details the weaknesses in the opinions from Dr. Axelrod and Dr. Jeret. Publicizing those weaknesses would not be advantageous to Dr. Axelrod or Dr. Jeret.

Accordingly, in the exercise of discretion, the undersigned reduces the hourly rate of Dr. Axelrod and Dr. Jeret in half. The number of hours billed is reasonable for both people. Thus, a reasonable amount of compensation for Dr. Axelrod is $4,100.00 and a reasonable amount of compensation for Dr. Jeret is $3,187.50. The net reduction to the proposed amount of costs is $7,287.50.

Thus, a reasonable amount of attorneys' costs is $7,240.39.

| Attorneys' Costs | |
|---|---:|
| Requested | $14,527.89 |
| Deduction for Dr. Axelrod | -$4,100.00 |
| Deduction for Dr. Jeret | -$3,187.50 |
| Awarded | $7,240.39 |

## V.   Conclusion

Ms. McDonald is awarded $47,744.59. This amount shall be paid through an ACH deposit to petitioner's counsel's IOLTA account for prompt disbursement. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[4]

---

[4] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.

**IT IS SO ORDERED**.

<u>s/Christian J. Moran</u>
Christian J. Moran
Special Master